Good morning. May it please the Court, my name is Jeremy Roller. I represent the petitioners in this matter, Rosario Juan Lopez and two of her children, Rita Castaneda Pedro Lopez and Zacharias Sebastian Jimenez. I plan on reserving about two minutes for rebuttal. This case is about what a court may review when an immigration judge denies an asylum application on timeliness grounds. Here, Mrs. Lopez did not file her application within one year of her arrival in the United States, as the INA requires. But she did present a great deal of evidence that her extraordinary and unique circumstances should excuse that failure. Despite this evidence, the immigration judge... And what part of it do you think was considered, as one reads the record? Yes. And the Attorney General admits this in the brief, that the only evidence that the immigration judge addressed was the fact that when he asked her why she didn't apply timely, she said, I don't speak English, I don't speak Spanish, and I didn't know what to do. That's not all of the evidence that was presented. Well, does that go to the change in circumstances, though? Do you think that is evidence to support a finding of change in circumstance? That is evidence to support a finding of change in circumstances, but that's not the only evidence that Ms. Lopez did submit. The Court asked that counsel be prepared to discuss the impact of Ramadan v. Gonzalez. And as the first case that this Court heard this morning was the case, the REAL ID Act has added some wrinkles. Here we have the REAL ID Act adding some wrinkles, and then Ramadan v. Gonzalez interpreting the Act adding some wrinkles. After we filed our initial brief, the REAL ID Act came into effect and said that the no-court-shall-review provisions shall not be interpreted as applying to constitutional or legal errors. And I argued that under that change, the Court should be able to examine whether extraordinary circumstances were met here. That argument is foreclosed by Ramadan v. Gonzalez, and I concede that as a must, and a number of other circuit courts of appeal have reached the same conclusion. And the attorney for the Attorney General has graciously shared with me her intention to submit some of those cases to this Court this morning. But that's not the only argument we made. This matter must be remanded because, although I would love the Court to determine that we met the extraordinary circumstances definition, this Court can't do that. But in making that decision, the immigration judge committed three errors that are either constitutional errors or reviewable legal errors. First, he, by ignoring some of the Petitioner's arguments regarding whether she has extraordinary circumstances, he failed to apply the law, and that's a constitutional due process violation. Secondly, to the extent he did consider any of those circumstances, he based his determination on speculation. And that also is a legal error that is reviewable because it implicates due process concerns. And third, the Petitioner's application was indisputably timely as to the Petitioner's daughter, Maria. How can that be, counsel, if it was a derivative application? That can be. I asked, I point the Court to the El-Hemry decision and to even the Sagdiak decision. In El-Hemry, there was a Palestinian family had been evicted from Kuwait, and the mother's application was untimely. She had been here for 10 years. Did the son in El-Hemry, though, file a separate application? No. The son had a derivative application, and that derivative application was considered. So the fact that the mother's, the lead applicant, was time-barred had no effect whatsoever on the son's application. And the same result was present in Sagdiak. There, the immigration judge denied Mr. Sagdiak's application as untimely. This Court later said he failed to apply the law and said, go back and look at it. But the immigration judge went ahead and considered the derivative applicant, Mr. Sagdiak's wife's application, because it was undisputably timely. Maria could have filed her own 589, right? Yes, she could have. But did not in this case? She did not in this case. And there was a hearing at which the immigration judge asked the family if they would like to proceed together without counsel present. It was really Zacharias, the son, who I think at the time was 16 years of age, said, sure, Judge, whatever you want. But did that only consolidate the proceeding? Did that consolidation of proceeding together actually affect a separate application? It seems to me that what the judge was asking, is there any reason why we shouldn't hear these together, that consolidation joined for hearing but not affecting the underlying application? I believe that the fact of that consolidation, just as in Elhemry v. Sagdiak, did nothing to affect the timeliness of the application as to Maria. And Sagdiak, however you pronounce it, wasn't the I.J. ignorant of the statutory exception to the 1-year deadline? Wasn't that the problem, is that he was not even aware that there was an exception to the 1-year? That's not what we have here. That's correct, Your Honor. And that is a – to the extent that I'm arguing that the I.J. ignored the law, that is a difference of degree, but I don't believe a difference of kind, because you're saying – Well, you're not arguing that he was ignorant of the law. You're saying he didn't apply the law. That's a difference in terms of a due process analysis. I'm saying he didn't apply the law because he failed to consider all of the Petitioner's That's another way of saying he abused his discretion in not granting the timeliness request, the exception to the late filing. But it goes to constitutional interest, Your Honor. And the – Well, it has to be a colorable constitutional claim in order to get around the bar. Yes. And the Ypres case, which was also cited in Sagdiak, says that even in discretionary determinations, an immigration judge or an agency must set forth how they considered the factors. And I submit – The evidence was before the judge, however. Correct? The evidence was before the judge. So how is it that counsel concludes the judge didn't consider that evidence? Because – Or is there in the record that would support that? Because instead of, as the Ypres case and as Sagdiak counsels, the judge did not enumerate to any degree how he considered the additional evidence aside from the fact that she didn't speak English and didn't speak Spanish and didn't know what to do. And I submit that in cases such as this, that where the underlying determination is not reviewable, it's even more important that these factors be listed and considered, one, so the BIA can go ahead and make a determination as to whether the underlying decision was correct. The BIA still does have that authority. And two, so that this Court can determine whether there's been a constitutional violation. Counsel, what's your best case authority for the proposition that failure to articulate the reasons for the ruling constitute a violation of due process? What's your strongest case? My strongest case is Ypres-Prado v. IMS. And – So if Ypres says that that's a constitutional violation. Well, and that case goes back, and I would say it goes back even to the first case I read my first day of law school, Goldberg v. Kelly and its progeny, such as Matthews v. Eldridge, that say people in – where they are – people in these situations are entitled to an individualized hearing on their merits. Was that cited in your brief, counsel? Ypres was cited. For the proposition that failure to articulate the reasons constitutes a due process violation? I believe so. I don't – I can't recall offhand my exact language, but I cited that case in the argument that by failing to apply this law, there was a due process violation. I see that I have less than a minute left. I would like to reserve that time. All right. Thank you. May it please the Court, and I'll ask Alicia Morris for a response to Alberto Gonzalez. I'd like for counsel to address where in the record does the I.J. address change of circumstance. Well, the – I know that the I.J. asked the question about why didn't you file the application earlier. We have a response as to why, but does counsel consider that to be change in circumstances within the meaning of the case law in this statute? Well, her argument – well, first of all, I would like to point out that the family was represented by counsel on reopening when they agreed to have the cases considered under the mother's case, and they were all derivative. So that is a waiver. The issue that her – Maria's application should have been considered separately has also been waived. That was not raised to the immigration judge when they were represented by counsel. It was not raised to the board. This Court cannot consider whether Maria's application should have been considered separately. On that issue, the only argument they made with counsel regarding change circumstances was that the change in circumstances had to do with the fact that she learned that asylum – the relief of asylum existed. That was her change circumstance. And once she learned about it, that's the argument she made. And once she learned about it, that she applied for it. But that's the same thing. That's just calling it extraordinary circumstances. I've been here for 11 years. I've been isolated, and therefore, I didn't know about asylum. But that is basically not extraordinary. So your position is that she waived any other argument, that the only argument that she made was just that? I didn't know about it until now. As soon as I found out about it, I applied for it. That's not extraordinary circumstances. That is everyone's circumstance. She had been here for almost a decade. She had three children in United States hospitals, all going to school in the United States. The question of isolation was addressed by the immigration judge. Her arguments were addressed by the immigration judge. He said, very few people who come here speak the language and know the law, but the bar applies to all of them. And the bar applies to judicial review. That has been held by every court to address the issues since RIDA was decided. Most recently, Supwun Putra, we'll sing on the 20th, but Supwun Putra and the Third Circuit, which I provided counsel with on Friday, said that they addressed all the due process issues and said there is no right to judicial review of these kind of questions, and specifically cited Ramadan. And in fact, Real ID was passed because when ARERA was passed, it created a loophole which was unintended for criminal aliens, gave them an extra level of judicial review. They got to go to habeas before they came to the court of appeals, and that's not what ARERA was for. It was designed to curtail review for criminal aliens. So RIDA was enacted, and that closed the loophole, brought all final orders of action. So you get your... Real ID Act? Yes, I'm sorry. It's an acronym. I guess they'll get used to it. I haven't heard it before. I think most people call it Real ID because it's short enough, unlike ARERA, which is... Mm-hmm. I can't even remember what that stands for anymore. But the point is, that was to close the loophole. That doesn't affect this petitioner, who is clearly not a criminal. But the fact remains that that loophole was closed for everyone, and in enacting the Real ID Act, Congress accepted what this Court has always held, which is constitutional questions remain even for criminal aliens and for everyone else. So that is what this, the Real ID Act, it closed the loophole, but it kept it open for due process issues. But every court to address it has held that this is not a due process issue. Now, what happened to this woman in 1991, which is one incident and it was 14 years ago, was horrific. And that was, and it's a very sympathetic case, and that was the basis for reopening. And that was the basis for a grant of withholding. But it cannot be extraordinary circumstances. Are there any questions? Just out of curiosity, has anything happened with regard to Guatemala and the grant of withholding? Are conditions such that we should expect her to face actual removal to Guatemala any time soon? Well, TPS has been considered because of the hurricane. As a matter of practicality, DHS isn't going to go after this person. They're three United States citizen children. She has withholding. I mean, the facts are here, as you noted, unusually sympathetic. Very sympathetic. And it's sometimes when proceedings are taken in cases like that that pretty terrible law gets created. Now, this is a situation that's sort of not of your making, but I would suggest the department would be well advised to exercise discretion as best it can. Well, in fact, it has. And I expect my client to continue to. They're three United States citizen children. There will be means to immigrate lawfully eventually through them. There's no question that she's facing removal at this time. DHS has bent over backwards for this family. Every humanitarian consideration has been given. But the fact is they are, you know, three of them are here unlawfully. I would point out that the husband chose to go back. She doesn't know what happened to him, but she also says there were serious marital problems at the time he left. Two of the children who came in in 1993 with the parents have chosen to go back to live in Guatemala. So, but nobody has moved, and I would ask my client to keep me apprised and ask them to exercise their discretion. But there is no reason that they wouldn't. Again, there are other means to eventually lawfully immigrate. I believe one child who was born in 93 eventually will be able to petition for the mother and for the siblings. The children may marry. There's a discretionary waiver for adjustment of status for that. There's no – they're not here unlawfully anymore because they have withholding. There's no bar to overcome. And, yes, it is – DHS is not an awful agency all the time. When Maria came in, she was released to the custody of her mother, who was here unlawfully, and DHS knew about that. She was released from detention. Change of venue was granted. The case was reopened when mom came in and said – you know, went straight to the lawyers and said, this is – something horrible happened to me. I didn't want to say it in front of my children. The immigration judge said, you're absolutely right. I understand. I will get a better interpreter. I'll ask for a female. Everything has been done for this family. But the statutory bar cannot be overcome. And I would like to assure this Court that I will talk to counsel, and I admire him for his passion and his legibility. And if something adverse – if DHS tries to take action, he can call me and I will talk to them. I give this Court my assurance on that. Are there any questions? No. Thank you, counsel. Rebuttal. Thank you. I'd like to briefly address the waiver argument. I note that that argument was not raised in the Attorney General's brief. And in support of keeping those arguments to which it might apply live before this Court, I would cite Aragon B.I. – Aragon Ion B.I.N.S. 206 F. 3rd 847, which states that when a matter – when a specific argument is not raised before the BIA, but the BIA interprets the statute at issue, there are not exhaustion problems. And I submit that that is the case here. I secondly just want to reiterate that there were other bases for the finding of extraordinary circumstances articulated that I.J. did not address, and that was the rape and how in – from her culture, it – I can't imagine what it would be like for her to describe it. The only evidence in the record was from Professor Davies, who discussed why that was unavailable, and we argue below that it was constructively unavailable for the same reason it needed to be addressed by the I.J. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the Court.
judges: Rawlinson, Clifton, Marshall